# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **PAULA ANN MILLIGAN and** | ) | |
| **HAROLD MONTGOMERY MILLIGAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:07-1053** |
| | ) | **Judge Trauger** |
| **UNITED STATES OF AMERICA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSOLIDATED WITH

| | | |
|---|---|---|
| **PAULA ANN MILLIGAN and** | ) | |
| **HAROLD MONTGOMERY MILLIGAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-0380** |
| | ) | **Judge Trauger** |
| **METROPOLITAN GOVERNMENT OF** | ) | |
| **NASHVILLE AND DAVIDSON COUNTY,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court is the motion to dismiss filed by the defendant United States of America (Docket No. 189), to which the plaintiffs have responded (Docket No. 196), and the United States has replied (Docket No. 199). Also pending is the plaintiffs' motion to strike the affidavit of Denny King, on which the United States relies in support of its motion to dismiss (Docket No. 194), and to which the United States has responded (Docket No. 197), and the

plaintiffs' motion to reinstate their *Bivens* claims against the individual federal defendants or to strike the United States' motion to dismiss (Docket No. 195), to which the United States has responded (Docket No. 198).

For the reasons discussed herein, the plaintiff's motion to strike the affidavit of Denny King will be denied, the plaintiff's motion to reinstate their *Bivens* claims against the individual federal defendants or strike the motion to dismiss will be denied, and the United States' motion to dismiss will be granted.

## BACKGROUND

In late October 2006, the U.S. Marshals Service, in conjunction with local law enforcement officials across the country, including those employed by the Metropolitan Government of Nashville and Davidson County, conducted "Operation Falcon III," a "fugitive round-up" that resulted in the arrest of more than ten thousand individuals.

One of the individuals arrested during Operation Falcon III is one of the plaintiffs in this matter, Paula Ann Milligan, a resident of Antioch, Tennessee.[1]  Mrs. Milligan was arrested on October 26, 2006, pursuant to a capias issued for Paula Milligan, a.k.a. Paula Rebecca Staps.  It is beyond dispute that, in arresting Mrs. Milligan, law enforcement officials arrested the wrong person.  The circumstances that led to Mrs. Milligan's arrest pursuant to a capias issued for another individual are discussed in detail in this court's previous rulings in this matter, most recently in a memorandum dated July 21, 2009 (Docket No. 187), and this memorandum will presume the reader's familiarity with those facts.

---

[1]The other plaintiff is Harold Montgomery Milligan, Mrs. Milligan's husband.

2

As a result of her arrest and a subsequent news report regarding her arrest, Mrs. Milligan and her husband filed two causes of action that ultimately were consolidated by this court. In those causes of action, the plaintiffs named as defendants the United States, the U.S. Marshals Service, the Metropolitan Government of Nashville and Davidson County ("Metro"), two Metro police officers, four unknown U.S. Marshals (two of whom have since been identified), Sinclair Television of Nashville, Inc., and a number of unknown agents, employees, and servants of the U.S. Marshals Service, Metro, and Sinclair Television of Nashville, Inc. The plaintiffs alleged violations of their constitutional rights, false light invasion of privacy, libel, negligence, conspiracy, assault and battery, false arrest, false imprisonment, malicious prosecution, negligent infliction of emotional distress, intentional infliction of emotional distress / outrageous conduct, and the violation of a number of Tennessee statutes. Various of these claims and defendants have since been dismissed by the court in its previous rulings, including the claims against the individual federal defendants, which the plaintiffs brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and which were dismissed by agreed order on July 6, 2009. This court's other rulings and the procedural history of the litigation are discussed in detail in the court's July 21, 2009 memorandum, and, again, the reader's familiarity with that history is presumed.

In addition to the claims they alleged initially, the plaintiffs have amended their complaint to assert claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (hereinafter "FTCA"). These are the only claims that currently remain against the federal defendants, and those claims are the subject of the pending motion to dismiss.

3

<u>**ANALYSIS**</u>

The United States has moved to dismiss the plaintiffs' claims under the FTCA, arguing that this court lacks subject matter jurisdiction over those claims pursuant to the discretionary function exception to the FTCA. In conjunction with their response to the motion to dismiss, the plaintiffs have moved to strike the affidavit of Denny King, on which the United States relies in support of its motion to dismiss. The plaintiffs additionally have moved to reinstate their *Bivens* claims against the individual federal defendants or to strike the United States' motion to dismiss. The court will first address the plaintiffs' motion to strike the affidavit of Denny King and their motion to reinstate their *Bivens* claims against the individual federal defendants or to strike the United States' motion to dismiss and will then turn to a consideration of the United States' motion to dismiss.

**I.      Motion to Strike King Affidavit**

The plaintiffs have moved to strike the affidavit of U.S. Marshal Denny King, which the United States relies upon in support of its motion to dismiss. In considering a motion to dismiss for a lack of subject matter jurisdiction, a court may resolve factual disputes, and the parties are free to supplement the record with affidavits without requiring the conversion of the motion to dismiss into one for summary judgment. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915-16 (6th Cir. 1986); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). However, the plaintiffs argue that Marshal King was not identified by the United States in its disclosures under Rule 26(a) of the Federal Rules of Civil Procedure or in its discovery responses, and that the discovery deadline has long passed. The plaintiffs assert that, as the United States did not identify Marshal King as a potential witness and provide the plaintiffs with

4

the opportunity to depose Marshal King, it should not be permitted to rely on his affidavit in support of its motion to dismiss.

However, the plaintiffs ignore the fact that their request to assert claims under the FTCA was not granted until April 30, 2009, after the discovery deadline had passed. It was these claims that rendered relevant Marshal King's testimony regarding the applicability of the discretionary function exception to the FTCA. The United States could hardly have been expected to anticipate the plaintiffs' FTCA claims and preemptively determine that Marshal King would provide testimony relevant to jurisdiction with respect to those claims. Moreover, it is without question that objections to jurisdiction may be raised at any time, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004); *Scotsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), and the court sees no reason to exclude Marshal King's affidavit, as it pertains directly to the question of this court's jurisdiction over the plaintiffs' FTCA claims.

The plaintiffs' motion to strike the affidavit of Marshal King will, therefore, be denied.

## II.     Motion to Reinstate *Bivens* Claims or Strike Motion to Dismiss

The plaintiffs have also moved to reinstate their *Bivens* claims against the individual federal defendants or, in the alternative, to strike the United States' motion to dismiss.

In support of their motion, the plaintiffs state that their lawsuit initially alleged *Bivens* claims against the individual federal defendants, but that they moved to amend their complaint to state claims against the United States under the FTCA once they had exhausted their administrative remedies as required by the FTCA and that they preferred to prosecute their

5

claims under the FTCA rather than under *Bivens*.[2]  However, according to the plaintiffs, they

wished to determine what defenses the United States would raise to their FTCA claims before

making a determination as to whether to dismiss their *Bivens* claims.  Thus, the plaintiffs note

that, in replying to the federal defendants' response to their motion to amend, they stated, "Prior

to dismissing any claim the Plaintiffs should be entitled to view what if any new defenses are

raised regarding their bringing an FTCA claim or immunity under the FTCA from the actions in

arresting Mrs. Milligan and / or compiling the proper warrant packages."  Further, according to

the plaintiffs, their attorneys discussed, with counsel for the federal defendants, the possibility of

dismissing the *Bivens* claims.  Based upon the Answer filed on May 18, 2009, in which the

federal defendants stated that "the plaintiffs have properly pled a jurisdictional basis under

*Bivens*, and under the FTCA" (Docket No. 165 ¶ 13), the plaintiffs agreed to dismiss their *Bivens*

claims, and, on July 6, 2009, this court entered an order granting the parties' joint motion to

dismiss the plaintiffs' *Bivens* claims without prejudice (Docket No. 185).

      According to counsel for the federal defendants, after filing the Answer, counsel became

aware that the United States might have a defense pursuant to the FTCA's discretionary function

exception, and, on June 12, 2009, counsel sought permission from the Department of Justice's

------

[2]Under *Bivens*, a plaintiff may recover damages for injuries suffered as a result of a
federal officer's violation of their constitutional rights.  *See Harris v. United States*, 422 F.3d
322, 331 (6th Cir. 2005).  However, the FTCA explicitly provides that a judgment under that
statute "shall constitute a complete bar to any action by the claimant, by reason of the same
subject matter, against the employee of the government whose act or omission gave rise to the
claim."  28 U.S.C. § 2676.  Thus, although a plaintiff is not foreclosed from bringing claims
under both *Bivens* and the FTCA, a plaintiff may not recover under *Bivens* where a
judgment—in favor of either the plaintiff or the United States—is entered on FTCA claims
"arising out of the same actions, transactions, or occurrences."  *Harris*, 422 F.3d at 333 (citing
*Serra v. Pichardo*, 876 F.2d 237 (6th Cir. 1986)).

Civil Division to raise that defense.  The Department of Justice granted counsel permission to assert the defense on July 14, 2009, after the plaintiffs had agreed to dismiss their *Bivens* claims. On July 31, 2009, the United States filed the instant motion to dismiss, asserting that subject matter jurisdiction was lacking pursuant to the discretionary function exception to the FTCA.

The plaintiffs argue that they should be permitted to reinstate their *Bivens* claims or, in the alternative, that the United States' motion to dismiss should be stricken, because, they allege, counsel for the United States did not act in good faith and because the plaintiffs would suffer unfair prejudice as a result.[3]  However, the fact of the matter is that, even if the plaintiffs were permitted to reinstate their *Bivens* claims, those claims ultimately would be subject to dismissal on the grounds of qualified immunity.[4]  *See Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 438 (6th Cir. 2006) ("As with § 1983 actions against state and local officials . . . a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity.") Although the plaintiffs correctly note that this court previously denied the individual federal defendants' motion to dismiss the *Bivens* claims on the grounds of qualified immunity, finding that there existed a factual question as to whether the officers had violated the plaintiffs' constitutional rights (*see* Docket No. 84), the facts adduced in discovery since that ruling have cast the plaintiffs' claims in a much different light.  As discussed in greater detail *infra*, it has now become clear that Mrs. Milligan's arrest resulted from certain law enforcement errors that

---

[3]The plaintiffs also argue that the motion to dismiss should be stricken because it relies upon the affidavit of Marshal King.  As the court has already declined to strike Marshal King's affidavit, it will not entertain this argument any further.

[4]Indeed, the United States indicated that it intended to renew its motion to dismiss the *Bivens* claims on the grounds of qualified immunity prior to the dispositive motion deadline, but did not do so only because the plaintiffs had agreed to dismiss those claims.

7

constituted, at most, negligence. However, to establish a *Bivens* claim, the plaintiffs bear the burden of proving that the individual federal defendants acted with the intent to deprive them of their constitutional rights; negligence alone will not support a *Bivens* claim. *See Connor v. Helo*, No. 85-5215, 1987 U.S. App. LEXIS 13020, at *7 (6th Cir. Oct. 2, 1987). Therefore, the plaintiffs' *Bivens* claims would be futile in any event.

Moreover, although the plaintiffs claim that they did not wish to dismiss their *Bivens* claims without knowledge of the defenses that the United States would assert with respect to the FTCA claims, the brief and unilateral sentence contained in their motion to amend reply brief can hardly be understood to represent some sort of agreement by which the United States would not assert any defenses other than those mentioned in the Answer. It appears that the plaintiffs simply wanted was to see all of the cards on the table before laying a bet on one of two mutually exclusive legal theories. To the extent that their argument would require the United States to reveal its litigation strategy to the plaintiffs so that the plaintiffs could shape theirs accordingly, it is simply untenable.

The plaintiffs' motion to reinstate their *Bivens* claims or strike the United States' motion to dismiss will, therefore, be denied.

## III.    Motion to Dismiss

The court now turns to the question, raised by the United States in its motion to dismiss, of whether the court has subject matter jurisdiction over the plaintiffs' FTCA claims.[5]

_____

[5]As an initial matter, the court addresses, and summarily rejects, the plaintiffs' argument that the United States admitted that jurisdiction exists in its Answer. In support of this argument, the plaintiffs rely on the following statement in the Answer with respect to jurisdiction:

The allegations of paragraph 13 are a statement of jurisdiction to which no answer

8

The FTCA provides a waiver of sovereign immunity for a plaintiff to pursue state-law tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances," to the extent that those tort claims arise from the acts of federal employees within the scope of their employment. 28 U.S.C. § 2674; *see Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). The liability of the United States under the FTCA is "determined in accordance with the law of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1242.

The FTCA excepts certain claims, however, from its waiver of sovereign immunity. *See* 28 U.S.C. § 2680. Where one of these exceptions applies, a court lacks subject matter jurisdiction. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984) ("If a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction."). Two of the FTCA's exceptions are relevant here. First, in what is known as the "discretionary function exception," the United States retains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Additionally, in what is known as the

---

is required, to the extent one is required, the federal defendants admit that the plaintiffs have properly pled a jurisdictional basis under *Bivens*, and under the FTCA. It is admitted that the plaintiffs have exhausted their administrative remedies pursuant to the FTCA and brought said claim to this court timely.

(Docket No. 165 ¶ 13.) Contrary to the plaintiffs' assertion, the United States' admission that the plaintiffs pled a *basis* for jurisdiction hardly constitutes an admission that jurisdiction in fact *exists*. Moreover, even if this paragraph constituted an admission of subject matter jurisdiction, jurisdictional questions may be revisited at any stage of litigation. *See Grupo Dataflux*, 541 U.S. at 571; *Scotsdale*, 513 F.3d at 552.

9

"intentional tort exception," the United States retains sovereign immunity for claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. 28 U.S.C. § 2680(h). The intentional tort exception contains a proviso, however, that essentially creates an exception to the exception, providing that sovereign immunity is waived with respect to claims arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution by federal investigative or law enforcement officers.[6] *Id.*

The case at hand presents not only the question of whether the discretionary function exception applies to the plaintiffs' FTCA claims, but also the question of whether the law enforcement proviso applies and the question of how the discretionary function exception and the law enforcement proviso interact in the event that they both apply. The court first addresses the intentional tort exception and the interplay between its law enforcement proviso and the

---

[6]In its entirety, the intentional tort exception provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to--

. . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

discretionary function exception before turning to the application of the discretionary function exception itself.

     *A.     Intentional Tort Exception under § 2680(h)*

The plaintiffs argue that the question of whether the discretionary function exception applies in this case is irrelevant, as the law enforcement proviso contained in § 2680(h) explicitly waives sovereign immunity for claims arising out of the torts of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution committed by federal investigative or law enforcement officers.

Recently, in *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009), the United States Court of Appeals for the Eleventh Circuit addressed the interplay between the law enforcement proviso contained in § 2680(h) and the discretionary function exception contained in § 2680(a). Specifically, the *Nguyen* court considered whether § 2680(h) or § 2680(a) controls when a plaintiff asserts a claim that falls, simultaneously and seemingly paradoxically, under the proviso contained in § 2680(h)—providing that sovereign immunity is waived for claims arising out of the enumerated intentional torts by federal investigative or law enforcement officers—and under the discretionary function exception contained in § 2680(a)—providing that sovereign immunity is not waived for claims arising from discretionary conduct. After carefully construing the statutory language, the *Nguyen* court concluded that the proviso in § 2680(h) takes precedence over the discretionary function exception of § 2680(a) when both apply to a particular claim. *Id.* at 1252-57. The court relied particularly on two "fundamental" canons of statutory construction, finding that § 2680(h) takes precedence over § 2680(a) both because a specific provision in a statute trumps a more general provision and because a more recently-added subsection of a

11

statute trumps an older subsection. *Id.* at 1252-53. The court went on to consider Congress's intent in enacting the law enforcement proviso and concluded that the purpose underlying the proviso squared with the court's interpretation of the proviso as taking precedence over the discretionary function exception. *Id.* at 1253-57.

It must be noted that the conclusion reached by the *Nguyen* court represents, to some degree, a minority view, as that court acknowledged. *Id.* at 1257. Indeed, a number of other federal appeals courts have concluded, contrary to the ruling reached in *Nguyen*, that the discretionary function provision of § 2680(a) trumps the law enforcement proviso of § 2680(h). *See, e.g.*, *Medina v. United States*, 259 F.3d 220, 224-26 (4th Cir. 2001) (holding that United States was immune to suit pursuant to discretionary function exception, despite fact that claims also fell under law enforcement proviso of § 2680(h)); *Gray v. Bell*, 712 F.2d 490, 508 (D.C. Cir. 1983) (holding that a plaintiff alleging an intentional tort by a law enforcement officer must also "clear the 'discretionary function' hurdle" to sustain his or her claim); *cf. Pooler v. United States*, 787 F.2d 868, 871-72 (3d Cir. 1986) (holding that United States was immune pursuant to discretionary function and interpreting intentional tort exception to apply only to law enforcement conduct taking place in the course of a search, seizure, or arrest); *but see Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) ("A government agent who departs from the duties of an investigator and embarks on an intentional abuse within the meaning of § 2680(h) . . . exceeds the scope of his authority and acts outside his discretion."). However, as the *Nguyen* court noted, most of the cases reaching a contrary ruling on the question of which provision controls also narrowly defined discretionary functions so that most conduct that would fall under the law enforcement proviso would be excluded from the discretionary function exception,

which would often lead to the same ultimate result. *Nguyen*, 556 F.3d at 1257. The *Nguyen* court further noted that none of these cases provides a compelling analysis of the same canons of statutory construction or the purpose underlying the law enforcement proviso of § 2680(h). *Id.* Moreover, the Sixth Circuit is not among the courts that have addressed the issue at all, and this court finds the *Nguyen* court's analysis to be thorough and its conclusion to be persuasive.

The question that remains is whether the § 2680(h) proviso applies here—that is, whether the plaintiffs' claims against the United States arise out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution by a federal investigative or law enforcement officer. There is no dispute between the parties that the U.S. Marshals and deputized Metro police officers whose conduct is at issue constituted law enforcement officers as defined in § 2680(h). The plaintiffs further assert that the list of claims enumerated in the § 2680(h) proviso includes claims that the plaintiffs allege in this case and that, therefore, the proviso applies and sovereign immunity is not waived.

In applying the § 2680(h) exception, however, courts have routinely held that a plaintiff may not avoid that provision's retention of sovereign immunity for certain intentional torts simply by framing their complaint as one for negligence. "In determining whether a complaint states a claim falling within any of the exceptions, the substance of the plaintiff's claim, and not the language used in stating it, is controlling." *Jackson v. United States*, 24 F. Supp. 2d 823, 831 (W.D. Tenn. 1998) (citing *Moffitt v. United States*, 430 F. Supp. 34, 37 (E.D. Tenn. 1976)); *see also Satterfield v. United States*, 788 F.2d 395, 399-400 (6th Cir. 1986) (holding that plaintiff's wrongful death claim did not fall under intentional tort exception because framing of claim "merely obfuscates the fact that [decedent's] death was the result of the battery committed on

13

him"); *Reed v. U.S. Postal Serv.*, 288 F. App'x 638, 640 (11th Cir. 2008) ("[A] plaintiff cannot avoid the § 2680(h) exclusions by recasting a complaint in terms of a negligent failure to prevent assault or battery . . . . It is the substance of the claim and not the language used in stating it which controls."); *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (noting that courts "look beyond [the party's] characterization to the conduct on which the claim is based" in determining whether a proposed claim is among the claims enumerated in § 2680(h)); *Truman v. United States*, 26 F.3d 592, 594-95 (5th Cir. 1994) (noting that a plaintiff may not circumvent § 2680(h) simply by framing a complaint in terms of a non-enumerated tort); *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976) ("In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts.").

It seems that this rule should apply equally where a plaintiff affirmatively seeks the safe harbor of the law enforcement proviso of § 2680(h) as where a plaintiff defensively seeks to avoid the retention of sovereign immunity that comprises the rest of § 2680(h). In other words, just as a plaintiff may not cloak a claim arising out of assault and battery in the language of negligence to avoid the retention of sovereign immunity for intentional torts under the first part of § 2680(h), logic dictates that neither may a plaintiff cloak a negligence claim involving a law enforcement officer in the language of assault and battery so to ensure that the claim falls under the law enforcement proviso in the second part of § 2680(h). The fact that waivers of sovereign immunity are to be strictly interpreted in favor of the sovereign, *see Lane v. Pena*, 518 U.S. 187, 192 (1996), provides a further compelling reason to consider the gravamen of a plaintiff's claim

14

rather than the particular manner in which that claim is framed when determining whether the claim falls under the law enforcement proviso of § 2680(h).

Although the plaintiffs assert some of the intentional torts enumerated in the § 2680(h) proviso, the plaintiffs' FTCA allegations are largely couched in the language of negligence. Specifically, the plaintiffs allege that law enforcement officers—including U.S. Marshals and deputized Metro police officers—failed to use ordinary and reasonable care in preparing for and executing Mrs. Milligan's arrest, in evaluating the list of individuals with outstanding capiases or warrants provided by the Metro Police Department, in evaluating the capias itself and the information regarding the charges on which Mrs. Milligan was arrested, in arresting Mrs. Milligan without a copy of the capias in their possession, and in failing to conduct further investigation when, at the time of her arrest, Mrs. Milligan claimed that she was innocent. (Docket No. 139-1 ¶ 92.) The plaintiffs' ostensible intentional tort claims appear subsequently, when the plaintiffs allege that Mrs. Milligan's arrest "amounted to an abuse of process, false arrest and false imprisonment," to the extent that there was never a capias for the arrest of Mrs. Milligan, and when the plaintiffs allege that the officers' actions constituted "negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, assault, battery, false arrest, false imprisonment and abuse of process under the laws of the State of Tennessee." (*Id.* ¶¶ 92-93.)

As a factual matter, at the core of the plaintiffs' claims is the allegation that Mrs. Milligan was arrested pursuant to the capias issued for another individual as a result of a number of law enforcement errors. Specifically, the parties have identified three errors that led to Mrs. Milligan's arrest in the lead-up to Operation Falcon III and to Mrs. Milligan's arrest in

15

particular. First, a clerk in the Metro Police Department's Warrants Division made a data entry error that erroneously linked certain of Mrs. Milligan's personal data with the outstanding capias issued for a woman named "Paula Milligan a.k.a. Paula Rebecca Staps." Second, a Metro police officer sent a Deputy U.S. Marshal a spreadsheet containing a list of outstanding capiases and warrants that contained Mrs. Milligan's name because the list had not yet been "cleaned," and the Deputy U.S. Marshal forwarded that list to the Tennessee Bureau of Investigation so that the Tennessee Bureau of Investigation could create arrest files to be executed during Operation Falcon III. Finally, on the day that Mrs. Milligan was arrested, another clerk in the Warrants Division failed to verify and corroborate information provided by an officer at the scene of Mrs. Milligan's arrest and erroneously confirmed that there was an outstanding capias for Mrs. Milligan's arrest that was consistent with the information provided by the officer at the scene, when, in fact, the information in the capias on file was not consistent with the information provided by the officer.

In light of these allegations, the gravamen of the plaintiffs' complaint lies in negligence. As such, the law enforcement proviso of § 2680(h) does not apply, and the question of whether the United States has waived its sovereign immunity with respect to the plaintiffs' claims will depend upon whether the discretionary function exception to the FTCA applies.

B.    *Discretionary Function Exception under § 2680(a)*

The Supreme Court has articulated a two-part test to determine whether a claim falls under the discretionary function exception to the FTCA. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997). In the first part of the test, a court must determine "whether the challenged act or omission violated a

16

mandatory regulation or policy that allowed no judgment or choice." *Rosebush*, 119 F.3d at 441

(citing *Gaubert*, 499 U.S. at 322-23). "If so, the discretionary function exception does not apply

because there was no element of judgment or choice in the complained of conduct." *Id.* (citing

*Gaubert*, 499 U.S. at 322). "The requirement of judgment or choice is not satisfied if a 'federal

statute, regulation or policy specifically prescribes a course of action for an employee to follow,'

because 'the employee had not rightful option but to adhere to the directive.'" *Id.* (citing

*Gaubert*, 499 U.S. at 322). If, however, the challenged conduct is discretionary, the second part

of the test requires a court to determine "whether the conduct is 'of the kind that the

discretionary function exception was designed to shield.'" *Id.* (citing *Gaubert*, 499 U.S. at 322-

23). This determination is guided by the purpose of the discretionary function exception, which

is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in

social, economic, and political policy." *United States v. S.A. Empresa De Viacao Aerea Rio

Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).[7]

     The plaintiffs argue that the actions of the U.S. Marshals and deputized Metro police

officers in this case are not subject to the discretionary function exception because federal

officials do not have the discretion, in any event, to violate the United States Constitution. In

---

     [7]In a ruling that pre-dated *Gaubert*, the Sixth Circuit held that a plaintiff bears the burden of invoking jurisdiction "by a pleading that facially alleges matters not excepted by § 2680," and that, having done so, the burden shifts to the United States "to prove the applicability of a specific provision of § 2680." *Carlyle v. United States, Dep't of Army*, 674 F.2d 554, 556 (6th Cir. 1982). The Sixth Circuit has since noted, however, that the ruling in *Gaubert* may affect the validity of the *Carlyle* burden of proof formulation, although the Sixth Circuit has declined to resolve this issue. *See Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 443 n.1 (6th Cir. 2005). In this case, the discretionary function exception applies regardless of whether the United States bears the burden of proof, and thus this court need not address this issue further. *See id.*

support of this argument, the plaintiffs rely heavily on the recent ruling by the United States

Court of Appeals for the Fifth Circuit in *Castro v. United States*, 560 F.3d 381 (5th Cir. 2009).

In *Castro*, the plaintiff brought suit against the United States on behalf of herself and her

daughter, both of whom are United States citizens, after border patrol agents deported her

daughter, although they were aware, at the time, that the daughter was a United States citizen.[8]

*Id.* at 384-85.  The plaintiff alleged violations of the Fourth and Fifth Amendments to the United

States Constitution as well as tort claims of negligence, intentional infliction of emotional

distress, false imprisonment, abuse of process, and assault under the FTCA.  *Id.* at 385.  The

district court dismissed the plaintiff's tort claims, finding that those claims were barred by the

discretionary function exception to the FTCA.  *Id.*  On appeal, the Fifth Circuit reversed the

district court, holding that the district court had failed to consider whether the officers had

exceeded the scope of their authority.  *Id.* at 388-89.  The court stated that federal officials do not

have the discretion to engage in conduct that violates the Constitution and observed that a

majority of circuit courts recognize the principle that official conduct "does not fall within the

discretionary function exception of § 2680(a) when governmental agents exceed the scope of

their authority as designated by statute or the Constitution."  *Id.* (citing *Sutton*, 819 F.2d at

1293).  The court further noted that it is unclear where in the *Gaubert* framework this inquiry

falls, but it concluded that,

> [b]ecause the Constitution can limit the discretion of federal officials such that the
> FTCA's discretionary function exception will not apply, if [a federal official]
> acted in violation of [a plaintiff's] constitutional rights, and therefore outside the

---

[8]The daughter was deported because she was in the physical custody of her father, an
illegal immigrant, when he was deported.  *Id.*

Case 3:07-cv-01053   Document 200   Filed 09/04/09   Page 18 of 25 PageID #: 3211

scope of their authority, that conclusion would eclipse the district court's analysis under the *Gaubert* framework.

*Id.* at 389.

Additionally, the court addressed the apparent contradiction between the principle that constitutional violations are not discretionary and the fact that only state-law tort claims, and not constitutional violations, are actionable under the FTCA, stating that,

> [w]hile it is well-recognized that violations of constitutional mandates are not actionable under the FTCA, the occurrence of such a violation would involve the performance of a non-discretionary function for jurisdictional purposes, if the constitutional tort is also cognizable as an intentional tort under state law.

*Id.* at 390 (citation omitted). In evaluating whether a federal official's actions violate the Constitution for the purpose of determining whether jurisdiction exists under the FTCA, the issue is "whether the complaint and any properly-considered facts could support a finding that the [federal officials'] alleged conduct exceeded the scope of their statutory or constitutional authority, not determining whether such a violation actually occurred." *Id.* Applying these principles, the *Castro* court found that the plaintiff had alleged that the border patrol agents exceeded the scope of their authority in deporting the plaintiff's daughter. *Id.* at 390-91. However, the court also noted that its holding was narrow and that, had the agents not known that the plaintiff's daughter was a United States citizen or had reason to doubt that she was a citizen, their decision "would likely not be intertwined with the constitutional strands that are prominent in this appeal." *Id.* at 392.

The issue is whether this case, like *Castro*, involves allegations of tortious conduct on the part of federal officials that are intertwined with "constitutional strands" such that the discretionary function exception is applicable. In considering whether this case is akin to

19

*Castro*—a holding that the court explicitly described as narrow and based on the particularly egregious facts of that case—the court is cognizant that the plaintiffs here, like the plaintiff in *Castro*, have alleged that the conduct of the law enforcement officers violated the plaintiffs' constitutional rights in addition to constituting state-law torts. Moreover, in previous rulings denying the federal defendants' motion to dismiss on the grounds of qualified immunity, this court found that certain facts in this case raised a legitimate question as to whether the officers' reliance on the information contained in the arrest file that they had in their possession at the time of Mrs. Milligan's arrest was reasonable, or whether the officers' alleged actions constituted a Fourth Amendment violation. (*See* Docket No. 84 at 17; Docket No. 96 at 14-15.) Specifically, the arrest file contained information indicating that a criminal search history revealed that there were no outstanding warrants for Mrs. Milligan's arrest and that there were no records matching Mrs. Milligan's name, social security number, and date of birth in certain law enforcement databases, facts that would appear to call into question whether Mrs. Milligan was, in fact, the person described in the capias. These facts, in particular, led this court to reject the federal defendants' argument that they were entitled to qualified immunity from suit.

However, discovery has since revealed additional facts about the circumstances that led to Mrs. Milligan's arrest. Most significantly, it is now clear that an officer on the scene of Mrs. Milligan's arrest radioed the Metro Police Department's Warrants Division to verify that an outstanding capias existed and to corroborate information contained in the arrest file with that in the capias. It is also clear that the warrant clerk who responded to the radio call wrongly stated that she had verified that an outstanding capias was on file and contained information corroborating that provided by the officer when, in fact, she had not verified that the warrant was

20

on file nor corroborated the information provided by the officer. These facts significantly weaken the basis for the court's earlier conclusion, made before discovery and summary judgment briefing, that the conduct alleged by the plaintiffs violated the Constitution. Although the information contained in the arrest file may have raised some initial doubts as to Mrs. Milligan's identity, the radio call served to remove any such doubt by appearing to provide verification and corroboration between the information contained in the arrest file and that contained in the capias.

Thus, this case differs markedly from *Castro*, where it was beyond question that border patrol agents knew that the plaintiff's daughter was a United States citizen, yet deported her along with her father regardless. This case would be parallel to *Castro* if the officers knew that Mrs. Milligan was not the individual identified in the capias, but arrested her regardless. However, this is not the case. Rather, this case is one of those carved out by the *Castro* court as not subject to that narrow ruling, as the officers here had no reason to believe that Mrs. Milligan was not the subject of the capias, particularly in light of the verification and corroboration provided by the warrant clerk. In sum, the plaintiffs' allegations and the facts that underlie those allegations do not permit the conclusion that the officers' conduct violated a statutory or constitutional duty. An examination of the plaintiffs' claims demonstrates that those claims are not intertwined with constitutional strands, as were the claims of the plaintiff in *Castro*, despite the fact that the plaintiffs here have alleged constitutional violations in addition to their state-law tort claims under the FTCA.

Having addressed the scope of authority argument raised by the plaintiffs and addressed in *Castro*, the court now turns to the application of the two-step *Gaubert* test. In applying the

first part of the test and determining whether the conduct at issue was "grounded in judgment or choice," a court must first ascertain "exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441. The conduct at issue should not be defined too narrowly nor too broadly; rather, the "relevant inquiry is whether the controlling statutes, regulations and administrative polices mandated" that federal officials conduct themselves "in any *specific* manner." *Id.* at 442. The United States posits that the conduct at issue here is the manner in which law enforcement officers obtained, investigated, and executed the capias pursuant to which Mrs. Milligan was arrested. The plaintiffs do not contest this formulation of the conduct at issue, and it is neither too broad nor too narrow but, rather, is in keeping with *Rosebush*.

In support of their argument that the officers' conduct does not fall under the discretionary function exception to the FTCA, the plaintiffs argue that the officers' conduct violated the Standard Operating Procedure of the Metro Police Department to the extent that the officers did not have a copy of the capias in their possession at the time of Mrs. Milligan's arrest. The Standard Operating Procedure provides: "Copies of warrants will be used to attempt service." (Docket No. 180-6 Ex. 3 at 5.) The context in which this provision appears sheds some light on its meaning, however. Specifically, this provision appears immediately following provisions stating that warrants will be maintained in the warrant office and providing procedures for removing warrants from the warrant office. (*Id.*) Given that context, it is clear that the Standard Operating Procedure does not establish a mandatory policy requiring an officer to have a copy of a warrant in his or her possession when effectuating an arrest but, rather, merely establishes a proscription on an officer's removing an original warrant from the Warrants

22

Division when making an arrest.[9]  This interpretation squares not only with the text of the Standard Operating Procedure itself, but also with the testimony of a police department representative that the provision does not require a police officer to have a copy of a warrant in his or her possession at the time of an arrest.  (Docket No. 167-5 at 65-67.)

The plaintiffs have not pointed to any other federal statutes, regulations, or policies that prohibited or prescribed the federal officers' conduct in obtaining, investigating, and executing the capias.  Further, Marshal King's affidavit states that the U.S. Marshals and deputized Metro police officers involved in Operation Falcon III were subject to no special limitations on their authority and had "broad discretion" in investigating and identifying the individuals arrested.  (Docket No. 191 ¶ 5.)  As such, this court finds that the officers' conduct in determining the manner in which to obtain the capias pursuant to which Mrs. Milligan was arrested, to investigate the capias and identify the subject of that capias, and to execute that capias is discretionary under the first step of the *Gaubert* analysis.  *See Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) ("We readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of

---

[9]It is also worth noting that, even if the Standard Operating Procedure did require an officer to have a copy of a warrant in his or her possession, as the plaintiffs allege, it is unclear whether the Metro Police Department's Standard Operating Procedure would constitute a *federal* statute, regulation, or policy preventing the officers from exercising judgment or choice and thereby excluding the officers' conduct from the realm of the discretionary function exception. In any event, the court need not resolve this question, as the police department's Standard Operating Procedure does not require an arresting officer to have a copy of a warrant on hand, as the plaintiffs allege.

23

judgment or choice."); *cf. Sharp*, 401 F.3d at 446-47 (holding that decisions by National Forest Service relating to law enforcement staffing are discretionary).

The second step of the *Gaubert* analysis requires the court to consider whether the challenged conduct involves legislative and administrative decisions grounded in policy, which the discretionary function exception was intended to shield. The United States Court of Appeals for the Eleventh Circuit addressed this issue in *Mesa*, in which it ruled that a law enforcement officer's decision of how to locate and identify the subject of an arrest warrant is grounded in policy to the extent that the determination necessarily requires the officer to weigh considerations including the urgency of arresting a suspect given the threat posed by the suspect and the likelihood that evidence will be destroyed, the desire to keep an investigation secret for tactical reasons or to protect sources or law enforcement officers, and the availability and allocation of limited law enforcement resources. *Mesa*, 123 F.3d at 1439. These same policy considerations underlie the decision of the U.S. Marshals and deputized Metro police officers as to the manner in which they would obtain, investigate, and execute the outstanding warrants and capiases in connection with Operation Falcon III, including the capias pursuant to which Mrs. Milligan was arrested. As the officers' conduct was not only discretionary but also the type of conduct that the discretionary function exception to the FTCA was intended to protect, the United States has retained sovereign immunity with respect to Mrs. Milligan's FTCA claims, and the United States' motion to dismiss for lack of subject matter jurisdiction will be granted.

## **CONCLUSION**

For the reasons discussed herein, the plaintiffs' motion to strike the affidavit of Denny King will be denied, the plaintiffs' motion to reinstate their *Bivens* claim against the individual

federal defendants or to strike the United States' motion to dismiss will be denied, and the

United States' motion to dismiss will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge