IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


PAULA ANN MILLIGAN and )
HAROLD MONTGOMERY MILLIGAN, )
)
    Plaintiffs, )
)
v. )     Case No. 3:07-1053
)     Judge Trauger
UNITED STATES OF AMERICA, *et al.*, )
)
    Defendants. )


CONSOLIDATED WITH


PAULA ANN MILLIGAN and )
HAROLD MONTGOMERY MILLIGAN, )
)
    Plaintiffs, )
)
v. )     Case No. 3:08-0380
)     Judge Trauger
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
*et al.*, )
)
    Defendants. )


**MEMORANDUM**

On September 4, 2009, this court entered a Memorandum and Order (Docket Nos. 200 &

201) granting the motion of the defendant United States to dismiss the plaintiffs' claims under

the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (hereinafter "FTCA"), and denying

the plaintiffs' motion to reinstate their claims against the individual federal defendants under

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  The

plaintiffs have now filed a motion to reconsider that ruling (Docket No. 205), to which the

United States has responded (Docket No. 209).  For the reasons discussed herein, the plaintiffs'

motion to reconsider will be denied.

## BACKGROUND

In late October 2006, the U.S. Marshals Service, in conjunction with local law

enforcement officials across the country, including those employed by the Metropolitan

Government of Nashville and Davidson County ("Metro"), conducted "Operation Falcon III," a

"fugitive round-up" that resulted in the arrest of more than ten thousand individuals.  One of the

individuals arrested during Operation Falcon III is one of the plaintiffs in this matter, Paula Ann

Milligan, a resident of Antioch, Tennessee.  Mrs. Milligan was arrested on October 26, 2006,

pursuant to a capias issued for Paula Milligan, a.k.a. Paula Rebecca Staps.  It is beyond dispute

that, in arresting Mrs. Milligan, law enforcement officials arrested the wrong person.

The circumstances that led to Mrs. Milligan's arrest pursuant to a capias issued for

another individual are discussed in detail in this court's previous rulings in this matter, including,

most recently, the court's September 4, 2009 ruling on the United States' motion to dismiss the

plaintiffs' FTCA claims and the plaintiffs' motion to reinstate their *Bivens* claims (Docket No.

200) and the court's July 21, 2009 ruling on the motions to dismiss filed by other defendants in

this matter (Docket No. 187).  Those rulings also discuss, in detail, the claims asserted by the

plaintiffs against the various defendants and the procedural history of this case.  This

memorandum will presume the reader's familiarity with both the facts of this case and its

procedural history, as detailed in the previous rulings.

2

## ANALYSIS

The plaintiffs have moved for reconsideration of the court's September 4, 2009 ruling granting the United States' motion to dismiss the FTCA claims and denying the plaintiffs' motion to reinstate their *Bivens* claims.

## I.      Standard of Review

The plaintiffs do not state the procedural basis for their motion to reconsider.  However, such motions may be filed under either Rule 59(e) or Rule 60 of the Federal Rules of Civil Procedure.

Rule 59(e) provides that "[a] motion to alter or amend a judgment shall be served no later than 10 days after entry of the judgment."  Fed. R. Civ. P. 59(e).  The Sixth Circuit has held that "[a] motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice."  *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 823 (6th Cir. 2008) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  Under Rule 59(e), "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.")).

By contrast to the standard governing a Rule 59(e) motion, the standard for granting a Rule 60(b) motion is "significantly higher."  *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268

(6th Cir. 1998)).  Rule 60 provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

However, by its terms, Rule 60(b) only affords relief from a final judgment or order.  As a general matter, "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  As the court's previous ruling granting the United States' motion to dismiss the FTCA claims and denying the plaintiffs' motion to reinstate their *Bivens* claims did not adjudicate all of the rights and liabilities of all of the parties, it does not constitute a final order and, therefore, the plaintiffs' motion will be treated as one made under Rule 59(e) rather than Rule 60(b).

## II.    *Bivens* **Claims**

The court first addresses the plaintiffs' motion to reconsider as it pertains to the court's denial of the plaintiffs' motion to reinstate their *Bivens* claims.  In the September 4, 2009 ruling, the court held that reinstating those claims would be futile, as they would be subject to dismissal

4

on the grounds of qualified immunity in any event. (Docket No. 200 at 7.) Although cognizant

of the fact that, early on in the case, the court had declined to dismiss the individual federal

defendants' claims on the basis of qualified immunity, finding that, at the time, there existed a

question of fact as to whether the officers had violated the plaintiffs' constitutional rights (*see*

Docket No. 84), the court ruled that facts since adduced during discovery demonstrated that Mrs.

Milligan's arrest resulted from, at most, negligence on the part of the law enforcement officers

involved (Docket No. 200 at 7-8).

The plaintiffs argue that this ruling was in error to the extent that testimony given by

Douglas Anderson, a police officer who was deputized as a U.S. Marshal for the purpose of

Operation Falcon III, ostensibly demonstrates that a factual dispute exists as to the facts

surrounding Mrs. Milligan's arrest. In connection with a disciplinary proceeding against a Metro

employee stemming from Mrs. Milligan's arrest, Officer Anderson testified that he believed that

the arrest file that the officers had in their possession at the scene of Mrs. Milligan's arrest

contained a copy of the warrant for her arrest.[1] (Docket No. 205-1 at 27-55.) He testified that he

radioed Metro's Warrant Division to confirm that a valid warrant was on file that contained

information that corroborated the information in the arrest file—information that he stated he

obtained from the copy of the warrant in the file. (*Id.*) According to the plaintiffs, Officer

Anderson's testimony conflicts with his previous deposition testimony, given in this case, to the

effect that the arrest file that the officers had in their possession at the time of Mrs. Milligan's

---

[1]It is not disputed that Mrs. Milligan actually was arrested pursuant to a capias rather than a warrant, although the parties have used the terms seemingly interchangeably in the course of this litigation. However, as Officer Anderson's testimony in the disciplinary proceeding refers to the "warrant," that is the term that the court will use throughout the remainder of this Memorandum.

5

arrest did not contain a copy of the warrant.  The plaintiffs further argue that, if the arrest file

did, in fact, contain a copy of the warrant, the plaintiffs have a far stronger case that Mrs.

Milligan's constitutional rights were violated and, therefore, a stronger case against qualified

immunity, particularly in light of the fact that a number of officers have testified that no

reasonable officer would have arrested Mrs. Milligan, had they reviewed the actual warrant prior

to her arrest.

However, the plaintiffs' reliance on Officer Anderson's testimony in the disciplinary

proceeding is problematic.  First, although Officer Anderson gave this testimony on April 6,

2009, well before the dispositive motion deadline and prior to the parties' briefing and this

court's ruling on the motions to dismiss filed by Metro, former defendant Sinclair Television of

Nashville, Inc., and the United States, the plaintiffs did not bring this testimony to the court's

attention until they filed the instant motion for reconsideration.  For evidence to be considered

"newly discovered" and thus grounds to alter or amend a judgment under Rule 59, the evidence

must have been "previously unavailable."  *GenCorp*, 178 F.3d at 834.  It is "'well-established . .

. that a district court does not abuse its discretion in denying a Rule 59 motion when it is

premised on evidence that the party had in his control prior to the entry of judgment.'"  *General*

*Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers,*

*Inc.*, 190 F.3d 434, 445 (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989)); *see*

*also Al-Sadoon v. FISI Madison Fin. Corp.*, 188 F. Supp. 2d 899, 903 (declining to consider

evidence on a motion to reconsider because "none of [it] [was] newly discovered and all of it

was available to the defendant when it filed its previous motion for summary judgment"); *Scott*

*v. Metro. Health Corp.*, 234 F. App'x 341, 366 (6th Cir. 2007) ("As with other rules of civil and

6

criminal procedure, Rule 59(e)'s new-evidence prong required [plaintiff] to show that due diligence would not have uncovered this evidence . . . .").

In addition, to the extent that the plaintiffs assert that Officer Anderson's testimony demonstrates that the court's previous ruling was erroneous, this argument also fails. The plaintiffs' new-found position—that there is a question of fact as to whether the arrest file contained a copy of the warrant—is completely contrary to the undisputed facts that have been established over the course of this litigation, and, indeed, is contrary to the plaintiffs' own prior assertions about the circumstances surrounding Mrs. Milligan's arrest. For example, in their response to the United States' motion to dismiss the FTCA claims, filed after Officer Anderson gave his testimony in the disciplinary proceeding, the plaintiffs asserted, unconditionally and based on Officer Anderson's deposition testimony in this case, that the arrest file did not contain a copy of the warrant and that this fact precluded application of the discretionary function exception to the plaintiffs' claims under the FTCA. (Docket No. 196 at 10-11.) Similarly, in their response to Metro's motion for summary judgment with respect to certain of the plaintiffs' claims and in their response to Metro's statement of undisputed facts, both of which also were filed subsequent to Officer Anderson's testimony in the disciplinary proceeding, the plaintiffs again cited Officer Anderson's deposition testimony for the fact that the arrest file did not contain a copy of the warrant and argued that this constituted a violation of Metro policy. (Docket No. 181 at 6-7; Docket No. 180 at 8-10, 14.) The plaintiffs further have noted that the copy of the arrest file produced in discovery in this matter did not contain a copy of the warrant. (Docket No. 180 at 8, 13.) Moreover, the plaintiffs never once objected to this court's repeated references, in its recent rulings, to the fact that the arrest file did not contain a copy of the

7

warrant.  (*See* Docket No. 187 at 6, 18-19, 31; Docket No. 200 at 15, 22-23.)  It appears that, despite the fact that the parties have consistently agreed that the arrest file did not contain a copy of the warrant, the plaintiffs now wish to alter their position simply to strengthen their argument for reinstatement of their *Bivens* claims.

However, even if the court were to ignore the fact that the plaintiffs' argument appears to be merely a strategic about-face, Officer Anderson's testimony in connection with the disciplinary hearing hardly provides evidence of a genuine factual dispute as to whether the arrest file contained a copy of the warrant and, thus, whether there is any basis for the plaintiffs' *Bivens* claims.   In his testimony, Officer Anderson repeatedly equivocated, stating that he had trouble recollecting exactly what was in the arrest file.  (Docket No. 205 -1 at 37, 54.)  He also stated that, although he "believed" and "assumed" that a copy of the warrant had been in the arrest file and that he had obtained the information he provided by radio to the warrant clerk from a copy of the warrant (Docket No. 205-1 at 33, 47-48), he was not certain whether the information he provided to the warrant clerk came from a copy of the warrant itself or from some other document contained in the arrest file (Docket No. 205-1 at 52-53).

Further, as this court has noted on occasion, the parties routinely have used imprecise language in reference to the document authorizing the arrest.  The parties have called the document, alternatively, a capias and a warrant, and witnesses have described the warrant as being "in hand" when, in actuality, it is undisputed that the warrant existed but was not physically in a given officer's hand.  Given that even counsel has not been able consistently to describe the warrant with any precision, it seems unrealistic to expect such precision from Officer Anderson.  In light of Officer Anderson's admitted uncertainty, his previous deposition

8

testimony that the arrest file did not contain a copy of the warrant, the long-standing concurrence between the parties on this point, and the fact that the arrest file produced during discovery did not contain a copy of the warrant, Officer Anderson's testimony to the contrary does not establish a genuine issue of fact as to this question and does not demonstrate that the court's previous ruling denying the plaintiffs' motion to reinstate their *Bivens* claims was in error.

## III.    FTCA Claims

The plaintiffs have also moved for reconsideration of the court's previous ruling dismissing their claims under the FTCA.  In the September 4, 2009 ruling, the court held that the plaintiffs' claims did not fall under a provision of the FTCA waiving immunity for certain intentional torts committed by law enforcement officers because, although the plaintiffs nominally asserted intentional tort claims, that gravamen of those claims, in fact, sounded in negligence.  (Docket No. 200 at 13-16.)  The court went on to rule that the United States was immune from suit pursuant to the discretionary function exception to the FTCA.  (Docket No. 200 at 17-24.)

First, the plaintiffs assert that the Third Amended Complaint alleges both negligence claims and intentional tort claims, that they are entitled to assert claims in the alternative, and that the court's ruling that their intentional tort claims sounded in negligence was in error. However, the court's previous ruling does not ignore the fact that the plaintiffs asserted both negligence claims and intentional tort claims, but merely concluded that the gravamen of their intentional tort claims was, instead, in negligence, and that the law enforcement proviso therefore did not apply to waive the United States' sovereign immunity with respect to those

9

claims.  The plaintiffs have cited no authority in support of their argument that the ruling

regarding the nature of their ostensible intentional tort claims was in error.

The plaintiffs next argue that the court previously declined to dismiss the plaintiffs' false

imprisonment claim against Metro (*see* Docket No. 187 at 39-40) and that this ruling precludes

the court from dismissing the false imprisonment claim against the United States, if not the other

intentional tort claims.  In making this argument, the plaintiffs characterize the court's ruling

with respect to the false imprisonment claim against Metro as a "[finding] that the Plaintiffs

submitted sufficient evidence of false imprisonment to withstand Defendant [Metro's] Motion

for Summary Judgment on this issue."  (Docket No. 205 at 14.)  However, the only issue

presented to the court on the summary judgment motion with respect to the false imprisonment

claim against Metro was whether that claim fell under the Tennessee Governmental Tort

Liability Act.  The court was not asked to consider any other grounds on which it might grant

summary judgment for Metro with respect to the false imprisonment claim, including whether

the plaintiffs had established the elements of that claim or whether that claim actually sounded in

negligence.  Thus, the narrow ruling with respect to the false imprisonment claim against Metro,

which was based solely on the language of a state statute, does not have any bearing on the

disposition of the false imprisonment claim against United States under the FTCA.

Finally, the plaintiffs argue that there exists a genuine issue of material fact as to whether

the officers' actions fall under the discretionary function exception to the FTCA.  In support of

this argument, the plaintiffs rely, once again, on the testimony that Officer Anderson gave in

connection with the disciplinary proceeding related to Mrs. Milligan's arrest and argue that this

testimony establishes that a fact question exists as to whether the arrest file contained a copy of

10

the warrant and, by extension, whether Mrs. Milligan's arrest constituted a violation of the Constitution. However, as discussed in detail *supra*, Officer Anderson's testimony does not create a genuine issue of fact as to the contents of the arrest file nor, therefore, as to whether the officers' actions constituted a violation of the plaintiffs' constitutional rights. Thus, the court's previous ruling dismissing the plaintiffs' FTCA claims on the grounds that they were barred by the discretionary function exception of the FTCA was not in error.

## CONCLUSION

For the reasons discussed herein, the plaintiffs' motion to reconsider this court's September 4, 2009 ruling will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11